UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STACY L. DUBEK,

                Plaintiff,

      v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                Defendant.

CASE NO.     C08-5510RBL-KLS

REPORT AND
RECOMMENDATION

Noted for April 24, 2009

Plaintiff, Stacy L. Dubek, has brought this matter for judicial review of the denial of her application

for supplemental security income ("SSI") benefits.  This matter has been referred to the undersigned

Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by

Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the

remaining record, the undersigned submits the following Report and Recommendation for the Court's

review.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is 45 years old.[1] Tr. 28.   She has a general equivalency diploma and past work experience as professional card dealer. Tr. 66, 71, 74.

On November 6, 2004, plaintiff filed an application for SSI benefits, alleging disability as of December 31, 1994, due to disc disease and depression. Tr. 16, 61-63, 65.  Her application was denied initially and on reconsideration. Tr. 16, 28-29, 52, 55.  A hearing was held before an administrative law judge ("ALJ") on June 21, 2007, at which plaintiff did not appear, but at which counsel for her did. Tr. 389-405.  A medical expert and a vocational expert also appeared at the hearing and testified. Id.  A supplemental hearing was held on October 31, 2007, at which plaintiff, represented by counsel, appeared and testified, as did a lay witness. Tr. 406-47.

On December 17, 2007, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

> (1) at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;
>
> (2) at step two, plaintiff had "severe" impairments consisting of degenerative disc disease and an affective disorder;
>
> (3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;
>
> (4) after step three but before step four, plaintiff had the residual functional capacity to perform light work, with the additional restriction that she could perform only simple routine tasks with limited public contact;
>
> (5) at step four, plaintiff was unable to perform her past relevant work; and
>
> (6) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 16-26.  Plaintiff's request for review was denied by the Appeals Council on June 20, 2008, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 416.1481.

On August 19, 2008, plaintiff filed a complaint in this Court seeking review of the ALJ's decision.

---

[1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

[2]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

(Dkt. #1-#3). The administrative record was filed with the Court on October 31, 2008. (Dkt. #14).

Plaintiff argues the ALJ's decision should be reversed and remanded to the Commissioner for an award of

benefits or, in the alternative, for further administrative proceedings for the following reasons:

    (a)     the ALJ erred in evaluating the medical evidence in the record;

    (b)     the ALJ erred in not finding plaintiff to have a severe anxiety disorder and pain disorder;

    (c)     the ALJ erred in assessing plaintiff's credibility;

    (d)     the ALJ erred in evaluating the lay witness evidence in the record;

    (e)     the ALJ erred in assessing plaintiff's residual functional capacity; and

    (f)     the ALJ erred in finding plaintiff capable of performing other work existing in significant numbers in the national economy.

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set

forth below, recommends that while the ALJ's decision should be reversed, this matter should be

remanded to the Commissioner for further administrative proceedings. Although plaintiff requests oral

argument in this matter, the undersigned finds such argument to be unnecessary here.

<u>DISCUSSION</u>

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the

Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole

to support the decision. <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Richardson</u>

<u>v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than

a scintilla but less than a preponderance. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir.

1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than

one rational interpretation, the Court must uphold the Commissioner's decision. <u>Allen v. Heckler</u>, 749

F.2d 577, 579 (9th Cir. 1984).

I.    <u>The ALJ's Evaluation of the Medical Evidence in the Record</u>

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the

medical evidence. <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in

the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions

1  of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion

2  must be upheld." <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d 595, 601 (9th

3  Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact

4  inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts

5  "falls within this responsibility." <u>Id.</u> at 603.

6      In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be

7  supported by specific, cogent reasons." <u>Reddick</u>, 157 F.3d at 725. The ALJ can do this "by setting out a

8  detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

9  thereof, and making findings." <u>Id.</u> The ALJ also may draw inferences "logically flowing from the

10  evidence." <u>Sample</u>, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences

11  from the ALJ's opinion." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755, (9th Cir. 1989).

12      The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of

13  either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996). Even when a

14  treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific

15  and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31. However,

16  the ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>,

17  739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only

18  explain why "significant probative evidence has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d

19  700, 706-07 (3rd Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

20      In general, more weight is given to a treating physician's opinion than to the opinions of those who

21  do not treat the claimant. <u>Lester</u>, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of

22  a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings"

23  or "by the record as a whole." <u>Batson v. Commissioner of Social Security Administration</u>, 359 F.3d 1190,

24  1195 (9th Cir. 2004); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242

25  F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the

26  opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31. A non-examining physician's opinion

27  may constitute substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u>

28  at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

A.    Dr. Savlov and Dr. Shuler

In late August, 2001, plaintiff underwent a behavioral medicine and pain management evaluation performed by Steve Savlov, Ph.D., who diagnosed her with a pain disorder associated with psychological factors in a general medical condition, a recurrent major depression, rule out post traumatic stress disorder ("PTSD") and/or PTSD symptomatology, and a global assessment of functioning ("GAF") score of 55 (or "[m]oderate [s]ymptomatology"). Tr. 251. In late June, 2006, plaintiff was evaluated by Gail K. Shuler, M.D., who diagnosed her with the following conditions: a recurrent major depression; rule out bipolar disorder, PTSD, panic disorder with mild agoraphobia, and chronic pain syndrome; a past history of alcohol abuse; and obsessive compulsive personality traits. Tr. 242. She also assessed plaintiff with a GAF score of 55. Id.

Plaintiff argues the ALJ erred by not providing any reasons for rejecting the restrictions opined by Drs. Savlov and Shuler. Neither Dr. Savlov nor Dr. Shuler, however, opined as to any specific work-related functional limitations stemming from her diagnosed conditions. See Tr. 240-42, 247-52. Plaintiff nevertheless points to the particular diagnoses they gave her. But the mere presence of diagnoses in the record is insufficient to establish disability. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993). Given that Drs. Savlov and Shuler did not find any specific work-related functional limitations, the ALJ cannot be faulted for failing to discuss, let alone adopt them. Accordingly, to the extent there was any error on the part of the ALJ here, that error was harmless. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion).

B.    Dr. Clem

`    In late March, 2005, plaintiff underwent a psychiatric evaluation performed by Joseph B. Clem, M.D., who diagnosed her with a panic disorder without agoraphobia, a depressive type mood disorder secondary to chronic back pain, alcohol dependence in remission, a history of polysubstance abuse in full sustained remission, and a GAF score of 52. Tr. 192. In terms of plaintiff's ability to function, Dr. Clem opined in relevant part as follows:

> . . . The claimant would experience some difficulties in performing simple and repetitive tasks as well as detailed and complex tasks because of her poor concentration. The claimant would also have problems in processing instructions from supervisors as well as interacting appropriately with co-workers and the public due to

her severe panic attacks and mild cognitive impairment. The claimant would therefore not be anticipated to perform her work activities on a consistent basis even with special or additional supervision at this time. The claimant would not be able to maintain regular attendance in the workplace nor complete a normal workday or workweek because of ongoing substantial interruptions from her depression and anxiety. The claimant would not be expected to deal well with the usual stresses encountered in a competitive workplace environment. This functional assessment does not take into account the physical limitations this claimant may be facing from her chronic back pain, which only further complicates and hinders her full functioning and sustain of [sic] employment.

Tr. 192-93. Dr. Clem further opined that while plaintiff's problems were "potentially partially treatable" in response to "a trial of antidepressants" and psychotherapy, she "would need a period of at least 12 months before" being re-evaluated. Tr. 192.

The ALJ stated in his decision that he discounted the above opinion to the extent Dr. Clem relied on plaintiffs "subjective complaints." Tr. 24. Plaintiff argues this statement provides an insufficient basis upon which to reject that opinion. The undersigned agrees. It is true that a physician's opinion premised on a claimant's subjective complaints may be discounted where the record supports the ALJ in discounting the claimant's credibility, and that, for the reasons discussed below, the ALJ in this case did properly discount plaintiff's credibility. See Tonapetyan, 242 F.3d at 1149; Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999).

On the other hand, "[a] patient's report of complaints, or history, is an essential diagnostic tool," and "[a]ny medical diagnosis must necessarily rely upon the patient's history and subjective complaints." Flanery v. Chater, 112 F.3d 346, 350 (8th Cir. 1997) (citation omitted). This would seem to be particularly true in regard to mental health evaluations. That is, an evaluation performed by a psychiatrist necessarily takes into account, at least to some extent, the patient's own self-report. Here, furthermore, to whatever extent Dr. Clem did rely on plaintiff's subjective complaints, the record shows he also conducted a mental status examination and provided his own observations of her during the evaluation. Tr. 188, 190-92; see Clester v. Apfel, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) (results of mental status examination provide basis for diagnostic impression of psychiatric disorder, just as results of physical examination provide basis for diagnosis of physical illness or injury); Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987 (opinion based on clinical observations supporting diagnosis of depression is competent psychiatric evidence). As such, the ALJ erred here in rejecting Dr. Clem's opinion.

C.     Dr. Brown

Norma L. Brown, Ph.D., completed a psychological/psychiatric evaluation form in late April 2005, in which she diagnosed plaintiff with PTSD, a mood disorder "due to back problem," and alcohol abuse in full sustained remission. Tr. 201.  Dr. Brown found plaintiff to be severely limited in her ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting, markedly limited in her ability to relate appropriately to co-workers and supervisors, and moderately limited in her ability to: understand, remember and follow complex instructions; learn new tasks; interact appropriately in public contacts; care for herself; and control physical or motor movements and maintain appropriate behavior. Tr. 202.  In addition, Dr. Brown specifically noted that she had "[s]ome concentration problems" and exhibited "[p]oor judgment" on psychological testing. Id.

With respect to Dr. Brown's findings, the ALJ found as follows:

> In spite of a fairly normal mental status examination, with no indication of lability, Dr. Brown assessed severe limitations in the ability to tolerate work stressors and marked limitations in the ability to interact with supervisors and co-workers.  The basis for the limitations appear to be the claimant's report of excessive crying, difficulty maintaining composure, and being overwhelmed (8F).  To the extent Dr. Brown relied on the claimant's subjective complaints, I discount that opinion.

Tr. 24.  As pointed out by plaintiff, the reason the ALJ provided here for rejecting Dr. Brown's findings is essentially the same as that he gave in discounting the opinion of Dr. Clem.  As with Dr. Clem, this basis for rejecting Dr. Brown's findings is not legitimate, as – even if the undersigned were to find it proper to reject a psychologist's opinion on the basis that it relied to some extent on the claimant's complaints – Dr. Brown appears to have conducted both a mental status examination and psychological testing. See Tr. 200-02.  The ALJ thus erred in so finding in this instance as well.

D.     Dr. Redmon

In late August 2007, plaintiff underwent a psychological evaluation performed by Marc Redmon, Psy.D., who diagnosed her with a moderate, recurrent major depressive disorder, a panic disorder with agoraphobia, alcohol dependence in sustained partial remission, bereavement, provisional PTSD, and a GAF score of 40. Tr. 270.  Dr. Redmon opined that "these disorders would significantly interfere with her ability to achieve and sustain steady employment regardless of her medical problems." Tr. 270.  He further opined that while her diagnosed disorders were "generally amenable to treatment through a combination of psychotherapy and psychotropic medications, months of such treatment" were "ordinarily required" before

"full or significant remission" could be achieved. Id.

At the same time, Dr. Redmon completed a mental functional capacity assessment form, in which he found plaintiff's diagnosed disorders resulted in her being markedly limited in her ability to perform activities within a schedule, maintain regular attendance and be punctual, and moderately limited in her ability to: understand, remember and carry out detailed instructions; maintain attention and concentration; sustain an ordinary routine without special supervision; complete a normal workday and workweek; perform at a consistent pace; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers; maintain socially appropriate behavior; and adhere to basic standards of neatness and cleanliness. Tr. 259-61.

The ALJ addressed Dr. Redmon's evaluation report and specific mental functional findings as follows:

> Dr. Redmon assessed moderate limitations in several functional areas and severe limitations in the ability to maintain a schedule and workplace attendance. However, the narrative portion of his report indicates possible symptom magnification. To the extent he relied on the claimant's subjective complaints, I discount Dr. Redmon's opinon.

Tr. 24. The undersigned once more agrees with plaintiff, for the same reasons discussed above, that to the extent Dr. Redmon did rely on her subjective complaints here, that fact alone is an insufficient basis upon which to reject his findings and opinions. In addition, while psychological testing conducted at that time may have indicated possible symptom magnification on plaintiff's part, clearly Dr. Redmon was aware of that fact – as it was noted in his evaluation report – and he factored it into his conclusions. See Tr. 268-69. As such, this too was not a valid reason for discounting them.

E.      Plaintiff's Other Arguments

Plaintiff argues the ALJ erred in failing to assess or consider the opinions of those physicians in the record who examined her, and deemed her back impairment to be severe enough to consider surgical fusion as one treatment option. But as with the mere diagnosis of an impairment, the mere consideration of one possible treatment option – even one as serious as back surgery – does not by itself establish the existence of significant work-related functional limitations, let alone disability. Plaintiff also criticizes the ALJ for obtaining testimony from a medical expert whose speciality is internal medicine rather than orthopedic surgery. But plaintiff has failed to demonstrate the medical expert who did testify was

1 unqualified to do so, or that the medical evidence in the record was so complex or ambiguous so as to

2 require the testimony of one with specialized training in orthopedics and/or surgery.

3       Plaintiff argues as well that the ALJ should have entitled the opinions of her treating and

4 examining orthopedic specialists to more weight than to the testimony of the medical expert. See Benecke

5 v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (more deference given to opinion of specialist about

6 medical issues related to his or her area of specialty). Although plaintiff fails to point out with which

7 particular treating or examining physician opinions, or portions thereof, she claims the ALJ failed to

8 properly give weight to, the undersigned does agree that the medical evidence in the record concerning her

9 back impairment should be re-considered on remand. This is because at least two of the physicians who

10 examined or treated plaintiff's back condition did indicate the presence of significant physical functional

11 limitations.

12       In early January 2003, for example, Diane Platnode, M.D., opined that because of the pain she had

13 from "a degenerative lumbar disc," plaintiff was "unable to tolerate a full work day," although she "could

14 work half days." Tr. 318. In mid-January 2003, Dr. Platnode told plaintiff to avoid sitting and "any lifting

15 greater than 10 pounds" (Tr. 323), and in mid-February 2003, opined that she was "unable to tolerate any

16 prolonged sitting" (Tr. 317). Some time after that, Dr. Platnode wrote that plaintiff could "not tolerate

17 prolonged sitting, standing, or walking for" greater than "2 hours at a time," but that she anticipated "good

18 recovery" with tolerance for those activities "for 4 hours at a time" after back surgery. Tr. 312. In early

19 May 2004, Richard Moore, M.D., wrote that plaintiff would be "unable to do ordinary activity" until her

20 low back symptoms had cleared. Tr. 178. In mid-June 2004, Dr. Moore again wrote that he could not give

21 "a prognosis or any decision about when" plaintiff "might be able to return to work until her evaluation by

22 neurosurgery." Tr. 177.

23       In regard to the medical opinion evidence in the record concerning plaintiff's physical impairments

24 and limitations, the ALJ found as follows:

25     . . . [T]he State agency medical consultant found that the claimant could perform light
    work activity (1F). Dr. [John] Lindberg testified [at the second administrative hearing]

26     that he did not see anything in the record that would contradict the State agency
    opinion. He noted the MRI findings and Dr. [Karl A.] Goler's neurological evaluation

27     of April 2005. I concur with Dr. Lindberg's testimony.

28 Tr. 24. The MRI findings in the record and those obtained by Dr. Goler, however, show the presence of

disc desiccation and a disc bulge – albeit slight, and without nerve root compression or other significant abnormalities – as well as back pain with radiation. Tr. 186-87, 196-97. In addition, while Dr. Lindberg may have testified that he saw nothing in the record that would contradict the opinion of the state agency medical consultant that plaintiff was capable of performing light work (see Tr. 139-46, 392-99), as noted above, the opinions of Dr. Platnode and Dr. Moore would indicate otherwise. Accordingly, on remand, the Commissioner should re-consider this opinion source evidence.[3]

III.    The ALJ Properly Discounted Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility

_____

[3]Plaintiff also raises a number of issues for the first time in her reply brief. For example, she argues the ALJ erred in failing to credit the opinions of Thomas Clifford, Ph.D., and Anita Peterson, Ph.D., two non-examining consulting psychologists, asserting that the panic disorder without agoraphobia with which they diagnosed her is supported by the reports of Drs. Savlov, Brown, Clem and Redmon that she had a "severe" anxiety disorder. However, because this issue was not raised in her opening brief, the undersigned declines to address it here. See (Dkt. #20, pp. 7-8). For the same reason, the following issues also shall not be considered: (1) that the ALJ erred in not discussing or assessing her pain disorder and limitations resulting therefrom; (2) that the ALJ erred in limiting his assessment of her mental impairments to just her diagnosed depressive disorder; (3) that the ALJ erred by acting as his own medical expert in regard to plaintiff's mental impairments; (4) that the ALJ erred in failing to obtain the testimony of a medical expert with expertise in psychiatric impairments; and (5) that the ALJ erred in failing to find plaintiff's diagnosed anxiety disorder and pain disorder to be "severe" impairments. See id.

evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. <u>Id.</u>

The ALJ discounted plaintiff's credibility in part because despite her "extreme complaints of pain," she had "not had very significant physical or MRI findings." Tr. 23. A determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. <u>Regennitter v. Commissioner of SSA</u>, 166 F.3d 1294, 1297 (9th Cir. 1998). Plaintiff argues the ALJ erred here by ignoring and/or overlooking the electrodiagnostic studies in the record, which she asserts were sufficient to convince her physicians that surgical fusion was a treatment option for her back impairment. As noted above, however, the mere fact that a treatment option is being considered – even one potentially as serious as surgery – does not establish significant work-related limitations. Nevertheless, given that, also as discussed above, the record does contain medical opinion evidence indicative of significant physical activity restrictions stemming from her back restrictions, it is questionable as to whether this reason for discounting plaintiff's credibility is a clear and convincing one.

The ALJ also discounted plaintiff's credibility in part because she had "sought no treatment for her back impairment between April 2005 and October 2006 when she requested an early refill of narcotic medications." Tr. 23. This is a valid reason for discounting a claimant's credibility. <u>See</u> <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ in discounting claimant's credibility in part due to lack of consistent treatment, and noting fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain); <u>see also</u> <u>Meanal v. Apfel</u>, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered claimant's failure to request serious medical treatment for supposedly excruciating pain).

Plaintiff argues this reason is not a valid basis for discounting her credibility, because a review of the record shows she was actively taking pain medication during that same period of time. The portion of the record plaintiff cites, however, does not support that assertion. <u>See</u> (Tr. 272-77). There is one report by plaintiff in early March 2006, that she was taking oxycodone and methadone, among other medications. Tr. 276. A progress note from early October 2006, however, fails to show plaintiff was prescribed any

pain medications prior thereto, other than one for ibuprofen as needed in late August 2006. Tr. 273. Even if plaintiff's early March 2006 self-report were credited as true, therefore, the ALJ still would be correct to the extent that there appears to have been no other significant treatment sought during the above period. Indeed, it was noted in early October 2006, that plaintiff apparently had not seen her primary care provider since April 2005. Tr. 272. As such, the undersigned finds the ALJ did not err here.

The ALJ also did not err in discounting plaintiff's credibility in part because despite her allegations of severe mental impairments, she did not participate in mental health treatment. Tr. 23. Plaintiff points to the same portion of the record as above, which does show plaintiff was prescribed medication for anxiety. Tr. 274. The record, however, is otherwise fairly devoid of evidence indicating plaintiff took advantage of any other mental health treatment, even though, as noted by the ALJ, such treatment was available to her. Tr. 23. For example, in late August 2001, plaintiff related no history of mental health treatment, and told Dr. Savlov that essentially the only medication she was taking was Vicodin. Tr. 247. She reported in early September 2002, that she "had never been put on an antidepressant for depression." Tr. 331. Indeed, she informed Dr. Clem in late March 2005, that she mainly was seeking disability for her back impairment, and did not think her psychiatric symptoms "as necessary [sic] impairing." Tr. 188.

While plaintiff also reported taking Ativan on an as needed basis for panic attacks at the time, she stated she had not been on any other psychotropic medications or in any mental health counseling. Tr. 188-89. In late April 2005, Dr. Brown noted that plaintiff was not currently receiving mental health services. Tr. 203. Plaintiff told Dr. Redmon the same thing in late August 2007. Tr. 266. The medical evidence in the record overall thus supports the ALJ's findings here. Plaintiff argues those findings fail to take into account her explanation for not taking medication for her mental impairments, which she asserts is because of having observed her mother's reactions to taking anti-depressant medication. While plaintiff did state this to be the case with respect to one particular anti-depressant, she never expressed the same concern for other anti-depressant medications. See id. Indeed, Dr. Redmon noted that plaintiff had been prescribed a different antidepressant "approximately 1 year ago," but had taken it "for only two weeks." Id. No reason was provided by plaintiff at the time, however, for discontinuing it.[4]

_____

[4]Plaintiff also had told Dr. Shuler in late June 2006, that doctors had "tried to give her medication for depression in the past but she never took it." Tr. 240. No explanation as to why she did not take the offered medication – including any based on the past experiences of her mother – was provided.

The ALJ next discounted plaintiff's credibility in part for the following reason:

> . . . [O]n evaluation with Dr. Redmon she produced an invalid PAI [Personality Assessment Inventory][5] and her Trails [Making Test][6] test results were inconsistent with general mental status examination findings. In the context of the claimant's general lack of credibility, I do not accept Dr. Redmon's suggestion that the PAI profile was a "cry for help".

Tr. 23. Plaintiff argues the ALJ erred here in ignoring and/or overlooking Dr. Redmon's determination that her responses on the PAI were not so severe as to invalidate her profile. Plaintiff, though, misses the point here. Dr. Redmon's complete statement on this matter reads as follows:

> A review of the validity indicators of Ms. Dubek's PAI profile suggests that she attended appropriately. There is no evidence to suggest that she attempted to present herself in a more positive or trouble-free manner than is in fact the case. There is, however, some evidence to suggest that Ms. Dubek responded inconsistently to some similar items. There is also evidence to suggest that she may have attempted to exaggerate or overemphasize the problems that she is experiencing. Her profile includes certain patterns or combinations of features that are atypical in clinical populations, but relatively common among individuals who are attempting to feign a mental disorder or are making a "cry for help". While the validity indicators suggest the presence of some inconsistency and a tendency toward negative impression management, these problematic response styles are not so pronounced as to invalidate the results of her profile. Here PAI profile must be interpreted somewhat cautiously, though, because it may somewhat overemphasize the nature or severity of the problems she is experiencing.

Tr. 268-69. Thus, while Dr. Redmon's statement may not be enough to affirmatively establish malingering on plaintiff's part, it certainly does call into question to at least some extent the veracity of her allegations of disability based on her mental health impairments.

The ALJ next gave the following reasons for discounting plaintiff's credibility:

> The claimant's poor work history, in combination with other factors, does not enhance her credibility. In her testimony, she described the difficult time she had as a card dealer and stated that her back pain was one of the reasons she left the job. Her testimony is contradicted by the testimony of the lay witness [Violet Mabe], who stated at the hearing that she did not notice any problems until after the claimant left the card-dealing job.

Tr. 23. Plaintiff argues the ALJ erred by ignoring and/or overlooking the testimony of Ms. Mabe that she was not a friend of plaintiff's at the time she held the card dealing job, but just saw her at the casino where

---

[5]According to Dr. Redmon, this constitutes "a self-report, objective measure of adult personality and pathology," which provides "information relevant for clinical diagnosis, treatment planning, and screening for psychopathology." Tr. 268. "It's four validity scales detect the presence of problematic or distorted responding, such as faking-good or faking-bad." Id. It was developed based on "[r]igorous scientific methods" and "enjoys excellent reliability and validity." Id.

[6]Again according to Dr. Redmon, this is "a general screening tool for neuropsychological deficits." Tr. 268.

she worked, and did not otherwise socialize with her.  Plaintiff also asserts that she was at home when she had her worst back pain, so Ms. Mabe could not have seen her when her back problem was severe, because she was not at the casino when this occurred.

The undersigned finds plaintiff's arguments unconvincing.  Although Ms. Mabe did testify that she did not really know plaintiff personally at the time, she also testified that she would go to the casino where plaintiff worked, that she was "a very outgoing person," and that she "always" talked to and communicated with people. Tr. 440.  As noted by the ALJ, Ms. Mabe went on to testify that she "did not notice any problems while" plaintiff was working as a card dealer, noticing them only after she left that job. Id. Given this testimony, the undersigned cannot fault the ALJ for determining that Ms. Mabe had sufficient contact with plaintiff at the time to know whether plaintiff was having back problems.  As to plaintiff's allegation that Ms. Mabe did not see her at her worst, there is no particular evidence for this in the record, and, in any event, given plaintiff is claiming total disability, it was not unreasonable for the ALJ to assume there would have been at least some indication of such problems apparent to Ms. Mabe at the time.

The ALJ further discounted plaintiff's credibility in part for the following reason:

> The claimant has provided inconsistent reports regarding illicit drug use.  She told Dr. Brown she stopped in her early 20s; she told Dr. Redmon she used illicit drugs throughout her life; at the hearing she testified that she experimented with drugs when she was 16 or 17 and not thereafter.

Tr. 23.  Plaintiff argues the ALJ improperly paraphrased Dr. Redmon's comments here, asserting he only stated she had reported "that throughout her life she has tried powdered cocaine, psilocybin mushrooms, and LSD." Tr. 266.  Plaintiff interprets this as merely meaning that she had "tried" certain substances at different points during her life.  She also argues there is no evidence in the record indicating that she had continued to use the substances she used in the past.  As to plaintiff's first argument, an equally plausible interpretation is that provided by the ALJ.  As noted above, if evidence admits of more than one rational interpretation, the Court must uphold the ALJ's decision. See Allen v, 749 F.2d at 579.

The point here, furthermore, is not whether plaintiff continued to use illegal substances, which is not in itself necessarily a valid basis for discounting a claimant's disability, but rather that the statements she provided regarding such use were inconsistent.  The evidence in the record concerning that issue, as noted by the ALJ, does adversely bear on plaintiff's credibility here.  In late August 2001, for example, plaintiff denied any "personal history of substance abuse." Tr. 248.  In late March 2005, however, she told

Dr. Clem that "[b]etween her teenage years to her early 20s she did experiment with marijuana, cocaine, LSD, mushrooms, and crystal methamphetamine." Tr. 190. In addition, while she also told Dr. Clem that she had "not used any illicit drugs since" then (id.), and indicated to Dr. Brown in late April 2005, that she had abused drugs in the "[r]emote past" (Tr. 201), as noted above, she told Dr. Redmon that she had tried "powdered" cocaine, mushrooms and LSD "throughout her life" (Tr. 266). Regardless of what she meant by this last statement, it still conflicts with the earlier ones she made noted above.

Lastly, the ALJ discounted plaintiff's credibility in part for the reason that:

> . . . Drug-seeking behavior appears to play a role. Group Health Cooperative chart notes show a history of over-using narcotics and a history of using multiple [providers] outside of Group Health physicians and pharmacies. In June 2004 the claimant reported that someone had taken her medications from her medicine cabinet. Richard Moore, MD, refilled her Percocet and advised that no refills for lost or stolen medicine would be honored in the future (4F/7-8). The claimant's only visit to her primary care physician in some two years was associated with an early refill of narcotic medications. GHC treatment notes in March 2007 showed a pattern of picking up narcotic medications early (15F/98).

Tr. 23. Plaintiff argues the ALJ erred by failing to cite the specific portion of the record indicating that she had used multiple providers outside of Group Health Cooperative. Once more, however, plaintiff appears to have missed the point. Whether plaintiff sought narcotic medications from one provider of health care or multiple providers, the fact is the record supports the ALJ's determination that there is a history of over-use of such medications on her part. See, e.g., Tr. 167-68, 171-72, 175, 273, 279-80, 282-83, 313, 326, 335, 340, 347, 349-50, 353, 357, 359, 361-62, 366, 369. This too is a valid basis for discounting plaintiff's credibility. See Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (ALJ properly considered drug-seeking behavior).

Plaintiff asserts the ALJ erred by ignoring and/or overlooking evidence in the record that multiple psychiatric and psychological examiners strongly supported her credibility. Plaintiff, however, points to no specific evidence in the record to support this assertion. More importantly, though, even if such is the case, there is no requirement that the ALJ must base his or her credibility determination on statements regarding a claimant's credibility provided by others – including those from treating or examining physicians – and, as discussed above, the ALJ did provide a number of legitimate bases for finding plaintiff to be not entirely credible regarding her allegations of total disability. Accordingly, while, also as discussed above, one of the bases the ALJ did provide was found to be improper, this does not render the

1 credibility determination in this case to be invalid as a whole, as that determination, for the reasons set

2 forth above, is supported by substantial evidence in the record. Tonapetyan, 242 F.3d at 1148.

3 IV.    The ALJ Erred in Evaluating the Lay Witness Evidence in the Record

4          Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into

5 account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to

6 each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).  An ALJ may discount lay

7 testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir.

8 1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence).  In

9 rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons"

10 for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to

11 those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512.  The ALJ

12 also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

13        The record contains statements and testimony from two lay witnesses.  The ALJ addressed that lay

14 witness evidence as follows:

15         In October 2007 a lay witness [Jonelle Decoteau] reported that the claimant limps,
           cannot stand long, needs frequent changes of position, cannot lift "at all", needs help
16         getting up and down, and is depressed and forgetful (15E).  I give little weight to that
           statement, as the treatment records do not document such extreme limitations.  Notably,
17         the claimant has not sought recent treatment for her alleged severe back problems other
           than to obtain an early refill of narcotic pain medications in October 2006.
18
19         . . .

20         Violet Mabe testified [at the second administrative hearing] that she did not notice any
           problems until after the claimant left her card-dealing job.  She testified that the
21         claimant has emotional problems.  She indicated that the claimant is forgetful and on an
           emotional roller coaster and suggested that the problems had to do with pain
22         medications.  She testified that the claimant used to be a hard worker and sociable.

23 Tr. 22-23; see also Tr. 133-38, 431-45.  Plaintiff argues the ALJ erred in evaluating the statements and

24 testimony of these witnesses.  The undersigned agrees.

25        With respect to Ms. Decoteau's statements, as discussed above, the ALJ erred in evaluating the

26 medical opinion evidence in the record concerning plaintiff's physical impairments.  That evidence

27 provides at least some support for plaintiff's claims that she cannot tolerate prolonged sitting and standing,

28 and thus is unable to perform full-time work on a consistent basis.  In addition, also as discussed above,

the ALJ erred as well in evaluating much of the medical opinion evidence in the record regarding

plaintiff's mental impairments, which do indicate the presence of significant functional limitations.

The ALJ, accordingly, incorrectly found Ms. Decoteau's statements lacked support in the record. While, again as discussed above, it is true that plaintiff appears to have not sought much in the way of treatment for her back pain, that fact does not necessarily adversely impact the credibility of Ms. Decoteau herself. In regard to the testimony of Ms. Mabe, although the ALJ did summarize her testimony, he failed to provide any specific reasons for not adopting her testimony. To that extent he erred here as well. This does not necessarily mean, as plaintiff alleges, that the observations of these two lay witnesses must be credited as true – given the conflicting medical and other evidence in the record – but that it is appropriate to remand this matter for further consideration of this evidence as well.

V.      The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

As noted above, the ALJ assessed plaintiff with the residual functional capacity to perform light work, with the further restriction that she perform only simple routine tasks with limited public contact. Tr. 21. Plaintiff argues the ALJ erred in excluding from this RFC assessment the mental functional limitations noted by Drs. Brown, Clem and Redmon, as well as limitations stemming from her back impairment and those observed by Ms. Decoteau and Ms. Mabe. The undersigned does find that because the ALJ erred in

evaluating the medical opinion evidence in the record concerning both plaintiff's mental and physical impairments, it is not clear his assessment of her residual functional capacity contains all of her limitations that may be supported thereby.

VI.     The ALJ's Step Five Analysis

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the first administrative hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's RFC. Tr. 400.  In response to that hypothetical question, the vocational expert testified that an individual with those limitations would be capable of performing other jobs. Id.  Based on that testimony, the ALJ found plaintiff was capable of performing other jobs existing in significant numbers in the national economy. Tr. 24-25.  Plaintiff argues, and the undersigned agrees, that the vocational expert's testimony was defective because it relied on a defective residual functional capacity assessment.  That is, the errors committed by the ALJ in assessing plaintiff's RFC noted above, makes it unclear as to whether the hypothetical question the ALJ posed here accurately reflected all of her mental and physical limitations.

The undersigned disagrees with plaintiff's assertion, however, that the ALJ necessarily should have

had a vocational expert testify at the second administrative hearing, as it ultimately was up to the ALJ as to whether the additional testimony presented at that hearing warranted further vocational expert testimony. Certainly, if on remand plaintiff is assessed with a different residual functional capacity, further vocational expert testimony may be warranted. The undersigned also disagrees with plaintiff that the evidence in the record necessarily supports the vocational expert's testimony that she would be unable to perform the jobs identified, if she was going to miss more than two days of work a month on a consistent basis or have to consistently take breaks beyond those normally allowed. See Tr. 400-01. While there is some evidence in the record, as discussed above, that may support such limitations, it is not entirely clear they are supported by the substantial evidence contained therein.

In addition, it also is not entirely clear that the vocational expert's testimony is inconsistent with the information contained in the Dictionary of Occupational Titles ("DOT").[7] The vocational expert testified at the first hearing that one job an individual with the functional limitations the ALJ had found plaintiff possessed could perform was the job of parking lot attendant. Tr. 400. Because a temperament for dealing with and serving people are noted in the DOT as being significant functions of that job, plaintiff argues the ALJ's restriction to limited public contacts precludes her from performing it. See Tr. 385-88. It is uncertain, however, that the ALJ's limitation is necessarily in conflict with the job description contained in the DOT. That is, because the terms "limited" and "significant" do not appear to be defined anywhere in the record or DOT with respect to this job, it is not clear an inconsistency exists here. Accordingly, this is another reason remand for further proceedings is warranted in this case.

VII.    This Matter Should Be Remanded for Further Administrative Remedies

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

---

[7]The ALJ may rely on vocational expert testimony that "contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues remain in regard to the medical and lay witness evidence in the record, plaintiff's residual functional capacity and her ability to perform other jobs existing in significant numbers in the national economy, this matter should be remanded to the Commissioner for further administrative proceedings.

It is true that where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or examining physician," that opinion generally is credited "as a matter of law." Lester, 81 F.3d at 834 (citation omitted). However, where the ALJ is not required to find the claimant disabled on crediting of evidence, this constitutes an outstanding issue that must be resolved, and thus the Smolen test will not be found to have been met. Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003). Here, despite the ALJ's errors in evaluating the particular medical evidence in the record noted above, other such evidence – including that provided by Dr. Lindberg and the state agency physicians and psychologists who reviewed the record – as pointed out by the ALJ, indicates plaintiff's mental and physical limitations may actually be much less severe, let alone disabling. See, e.g., Tr. 139-62.[8] Thus, given the existence of these conflicts in the medical evidence, application of the credit as true rule is not required.

It also is true that where lay witness evidence is improperly rejected, it may be credited as a matter of law. See Schneider v. Barnhart, 223 F.3d 968, 976 (9th Cir. 2000) (finding that when lay evidence rejected by ALJ is given effect required by federal regulations, it became clear claimant's limitations were sufficient to meet or equal listed impairment). As noted by the Ninth Circuit, however, the courts do have

---

[8]The undersigned notes in addition that while Dr. Brown found plaintiff to have limitations that fell within the marked to severe range, she opined that plaintiff would be so limited for a maximum period of only six months. See Tr. 202-03; see also Tackett, 180 F.3d at 1098 (claimant must show he or she suffers from medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for continuous period of not less than twelve months). Also, as discussed above, two of the examining medical sources who evaluated plaintiff in regard to her mental impairments – Dr. Savlov and Dr. Shuler – failed to opine as to any specific work-related limitations stemming therefrom. Lastly, as pointed out by the ALJ, much of the objective medical evidence in the record, including physical examination and MRI findings, were not very significant, calling into question, again as pointed out by the ALJ, plaintiff's complaints of severe back pain.

"some flexibility" in how they apply the "credit as true" rule. <u>Connett v. Barnhart</u>, 340 F.3d 871, 876 (9th Cir. 2003).  Further, <u>Schneider</u> dealt with the situation where the Commissioner failed to cite any evidence to contradict the statements of five lay witnesses regarding her disabling impairments. 223 F.3d at 976.  As discussed above, though, in this case there is conflicting evidence regarding plaintiff's mental and physical limitations, and thus application of the credit as true rule also is not required here.

CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. <u>See also</u> Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **April 24, 2009**, as noted in the caption.

DATED this 26th day of March, 2009.


Karen L. Strombom
United States Magistrate Judge